THE PEOPLE, *ex rel.* Edward T. Hewlett, *vs.* MATTHEW T. BRENNAN, Sheriff. &c.

The relator, being in custody of the sheriff under an execution issued against his person upon a final judgment, a justice of this court, while holding the court of oyer and terminer, made an order, signed by him, but not entered, bearing a caption as follows: " At a special term of the Supreme Court and of the oyer and terminer," by which he directed that the relator be discharged from imprisonment, upon his own recognizance. The sheriff refusing to discharge the relator, upon the ground that the justice had no authority to grant the order, the same justice, upon *habeas corpus*, ordered the prisoner's discharge, on the ground that he was illegally imprisoned.

*Held*, 1. That the first order was not one made at a special term of the Supreme court, but was to be deemed an order made at a court of oyer and terminer.

2. That even if the court had jurisdiction, the order was wrong, because the "process"—viz. the execution—was in due form, and showed plainly, that by virtue of it, the defendant could be "further legally detained," and therefore ought not to have been discharged.

3. That the prisoner, not being detained on a criminal charge, the court of oyer and terminer had not the jurisdiction it exercised in discharging him. That it had no other power than that which it, or any other court, could exercise upon the prisoner being brought before it by *habeas corpus*, viz. to remand the prisoner when it appeared that he was held on execution issued upon a final judgment of a competent court.

4. That the original order of discharge being void, and being the only ground upon which it could be pretended that the imprisonment was illegal, the subsequent order of discharge, based upon that supposed illegality, made upon the writ of *habeas corpus*, was erroneous, and the proceedings must be reversed, and the prisoner remanded.

Although the statute gives to courts of oyer and terminer power to deliver the jails, according to law, of all prisoners, this refers only to cases of crimes; those courts being solely courts of criminal jurisdiction.

Where it appears from the sheriff's return to a writ of *habeas corpus*, that the relator is held by him upon civil process, and that another person, viz., the plaintiff in the judgment, has an interest in his detention, eight days' notice of the time and place at which the writ is made returnable, must be given to such plaintiff, or his attorney ; and without such notice, the court has no power to grant the discharge.

CERTIORARI to review certain proceedings had before Hon. GEORGE G. BARNARD, upon a habeas corpus issued by him for the relief of the relator, and directed to Mat-

The People v. Brennan.

thew T. Brennan, sheriff of the city and county of New York. The habeas corpus was allowed by Justice GEORGE G. BARNARD on the 15th of December, 1871, and was made returnable before him, at special term, on the 16th of December, 1871. The sheriff produced the body of the relator before Justice BARNARD, in accordance with the command of said writ, on the 16th day of December, 1871, and made his return, in which he stated that he arrested and took into his custody the said Edward T. Hewlett, on or about the 27th day of September, 1871, under and by virtue of a certain execution against his person, directed and duly issued to him as sheriff, as aforesaid, of which he annexed a true copy, and the original whereof he produced ; and that he held and detained him in his custody by virtue of said process. The return also stated, that the plaintiff in the said process named, had an interest in the continued imprisonment and restraint of the said prisoner, under and by virtue of said process, and that their attorney was David Crawford, Esq., who had an office in the city of New York, at 93 Duane street.

The execution was issued upon a judgment recovered against Hewlett, by Joel B. Farnum and others, on the 24th of July, 1871, for $3581.28, and was against the body of the defendant.

The relator traversed, and sought to avoid the sheriff's return by denying that he was detained and imprisoned by reason of an execution against his body, and setting up an alleged discharge from imprisonment, under the execution, by an order of this court, made at a special term and court of oyer and terminer, held by Justice BARNARD, November 3, 1871. The sheriff replied to the traverse to the return, and averred that the relator was detained by him, under and by virtue of an execution against his person, and denied that said Hewlett was discharged from imprisonment under, or by virtue of, the order of the court in said traverse set forth, and denied

that said court had any power or authority to grant said order, or any order in the premises. The order does not recite that the relator was one of the persons brought before the oyer and terminer. It directs "that said E. T. Hewlett, committed June 12th, 1871, on execution for $3581.28, be discharged from imprisonment thereon, upon delivery of his own recognizance for said amount to said sheriff in manner as above provided," i. e., for the benefit of the plaintiffs, at whose suit said execution issued. The sheriff replied, affirming that the relator was detained by him, under and by virtue of an execution against his person, and denying that he was discharged from imprisonment by virtue of the order set forth in the relator's plea, and that the court had any power or authority to grant said order, or any order in the premises. The sheriff, by his counsel, objected to any further proceedings under the writ of habeas corpus, because it did not appear that the plaintiffs, in the execution against the body of the relator, or their attorney, had had any notice of the time or place at which said writ was made returnable, and also because the return showed the relator was in custody under final process against his person. The justice overruled the objection, and directed the parties to proceed with their proofs and allegations. The relator offered no evidence, or proof, in opposition to the facts stated in the return, or in opposition to the original execution so produced. On the same day, the justice indorsed, upon the writ of habeas corpus, an order remanding the relator to the custody of the sheriff until the further order of the court. The sheriff thereupon returned the relator to the common jail of his county, where he still remained.

Nothing was subsequently done in said matter until the 28th day of December, 1871, when an order was made by Justice Barnard discharging the relator from the sheriff's custody; but staying proceedings for ten days, to take the case to the general term.

The People *v.* Brennan.

It nowhere appeared that the plaintiffs in said execution, or their attorney, had any notice of any kind, of the time or place, at which the writ of habeas corpus was made returnable; and it was alleged that, as a matter of fact, they never had any notice either of the issuing of the writ, or the granting of the order.

*Van Wyck & Goldey,* for the relator.

*A. J. Vanderpoel,* for the sheriff.

*By the Court,* CARDOZO, J.   In my opinion it would be well if there were no such thing as arrest in a civil action. If an act be not a crime—but only the contracting of a debt—a man should not be imprisoned for it; while, if it be a crime, he should be punished only in the due administration of the criminal law.   But whatever may be our individual views as to the wisdom, or policy of a law, we are bound to administer the statute as we find it.

It appears, in this case, that Hewlett was in custody of the sheriff, under execution issued against his person, on the 27th day of September, 1871, upon a final judgment recovered against him, in an action in this court, at the suit of Joel B. Farnum and others.

On the 3d of November, Justice BARNARD, while holding the court of oyer and terminer, made an order, signed by him, but not entered, but bearing a caption as follows: " At a special term of the Supreme Court, and of the oyer and terminer," by which he directed that " E. T. Hewlett, committed June 12, 1871, on execution for $3581.28, be discharged from imprisonment thereon, upon delivery of his own recognizance for said amount, to the sheriff," for the benefit of the plaintiffs, at whose suit said execution issued.   This order was served upon the sheriff, who, believing that the judge had not the authority to grant it, and therefore that obedience to it would not protect the

sheriff from liability as for an escape, declined to discharge the prisoner. A writ of habeas corpus was then issued, and upon that proceeding, before Judge BARNARD, the judge, on the ground that Hewlett was illegally imprisoned, ordered his discharge. The proceedings are before us, by *certiorari,* for review.

The ground of the alleged illegality of Hewlett's imprisonment is the order made by Judge BARNARD on the 3d of November, which I have before mentioned. One answer to the discharge, on habeas corpus, granted on the 28th of December, 1871, is this: The order of November 3 only discharged Hewlett from imprisonment on a commitment dated June 12, 1871. That would not justify his discharge upon execution issued September 27, 1871. This renders it unnecessary to examine these proceedings further. But perhaps there may have been a clerical error in the dates, and at all events, as this is but one of a number of persons who claim the benefit of the order of November 3, it will be best to consider the subject as if the discrepancy in dates did not exist.

The order was not one made at a special term of the Supreme Court. Circuit courts and courts of oyer and terminer, are to be held at the same places and commence on the same day, (*Code,* § 21;) but there is no provision for holding a special term of the Supreme Court and a court of oyer and terminer together. Nor is there any such court known to the law as a "special term" of the Supreme Court *and* court of oyer and terminer. There is a special term of the Supreme Court, and there is a court of oyer and terminer, but there is no such thing as a special term of both those courts, and no such thing as a special term of a court of oyer and terminer. This being so, and there being, as I have remarked, no provision as respects special terms and courts of oyer and terminer, similar to that regarding circuit courts and courts of oyer and terminer, above quoted, it is plain that the order in

The People *v.* Brennan.

question was made at a court of oyer and terminer, not only because there is no express direction to "enter" it in the Supreme Court, it being only signed by the judge, but from the statement in the order that it was made when there was present "Honorable GEORGE G. BARNARD, justice of the oyer and terminer." Indeed the whole character of the order—the recital in it, that the court had directed the sheriff to bring before it the persons named, who are held and detained in the county jail, together with the "process" by and under which they are held in custody, for the purpose of enabling the court to determine whether said persons can be "further legally detained,"—marks it as an order of the court of oyer and terminer, and made for the purpose of determining whether, upon the "process" under which the prisoners were held, they could "legally be further detained;" that is, whether the "process," on which they are held, is legally sufficient. Beyond this, there was no entry, as an order at special term of the Supreme Court, and if there had been, there is no proof that the court ever acquired jurisdiction, either by order to show cause or notice of motion served upon the plaintiffs.

But, as I have said, it is plain that it was an application to the court of oyer and terminer; and the questions are: 1st. Had that court the power which it exercised? 2d. If it had, was the exercise of it right, in this case? I shall say a few words upon each point, in the inverse order in which I have stated them.

Assuming the existence of the jurisdiction claimed, I think it clear that the order was wrong, because the "process"—which was all that the court had before it—viz., the execution, was in due form, and showed, plainly, that by virtue of it the defendant could be "further legally detained."

If the court had the jurisdiction, it ought not, therefore, to have discharged the prisoner. But perhaps it might be

argued that if the order were wrong, it ought to have been appealed from; but the answer is, that there is no proof that the plaintiffs in the execution ever had any notice of the proceeding. However, it is not very material to consider that matter; because it is plain that the court of oyer and terminer had not the jurisdiction which it exercised; and that defect—want of jurisdiction—may always, and at any stage of a proceeding, be raised.

The courts of oyer and terminer have power to deliver the jails, according to law, of all prisoners therein, (2 *R. S.* 214, § 29, *subd.* 3, *Edm. ed.*) But this refers only to cases of crimes; the court of oyer and terminer being solely a court of criminal jurisdiction. (*Chit. Crim. Law, vol.* 1, *title courts of criminal jurisdiction.* 4 *Black. Com.* 261, *same title.*)

Thus, too, we find that the statute, (2 *R. S.* 784, § 27, *Edm. ed.*,) provides that "after the court of oyer and terminer shall commence its sittings in any county, no prisoner detained in the common jail of any such county upon any *criminal charge*, shall be removed therefrom by any writ of habeas corpus, unless such writ shall have been issued by such court of oyer and terminer, or shall be made returnable before it." Thus we see that it is "criminal charges" that are the peculiar jurisdiction of the court of oyer and terminer.

The prisoner, therefore, not being detained on a criminal charge, the court of oyer and terminer had no other power than that which it or any other court could exercise upon his being brought before it by habeas corpus. There was nothing to oblige this prisoner, not being held on criminal process, to apply to the court of oyer and terminer. Any other court could issue a habeas corpus and entertain the proceeding; and the court of oyer and terminer could do no more than any other court, in the premises. Now, upon the theory that Hewlett was before the court on habeas corpus, what power did the court possess?

That question is answered by the statute, which declares the duty of the court. The Revised Statutes, (*vol.* 2, *p.* 584, § 22; 588, § 40, *Edm. ed*,) settles the question that the prisoner must be remanded because he is held on execution issued upon a final judgment of a competent court of civil jurisdiction; and such persons are not entitled to prosecute a writ of habeas corpus, or be discharged from imprisonment.

It follows that the order of November 3 was beyond the power of the court; and that order being the only ground upon which it can be pretended that the imprisonment is illegal, the order of discharge, based upon that supposed illegality, made upon the writ of habeas corpus, is wrong, and the proceedings must, therefore, be reversed, and the prisoner remanded.

There is yet another point, to which, perhaps, I ought to refer, and which is equally fatal to the order we are reviewing.

It appeared by the return to the writ of habeas corpus, that the relator was held by the sheriff upon civil process, and that another person, viz., the plaintiff in the judgment, had an interest in his detention. When that is so, the statute is mandatory, that before any order shall be made for his discharge, like notice shall be given to such party or his attorney, of the time and place at which such writ shall have been made returnable, as is required to be given of special motions in the Supreme Court. (2 *R. S.* 589, § 46, *Edm. ed.*) That is to say, notice of eight days must be given to the plaintiff or his attorney, Such notice was not given here, and for that reason the court had no jurisdiction to grant the discharge.

However we may sympathize with the unfortunate debtor who is imprisoned, it will not do to relieve him through a proceeding which the law does not justify; and which, being without jurisdiction, would only entail liability upon the sheriff.

The law provides means by which the honest but unfortunate imprisoned debtor may obtain relief, and be discharged from imprisonment, and to those methods resort · must be had; and if they are insufficient, further legislation must be sought upon the subject.

Proceedings reversed, and prisoner remanded.

[First Department, General Term, at New York, January 1, 1872. *Ingraham*, P. J., and *Cardozo*, Justice.]